**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES GOLBERT, COOK COUNTY PUBLIC GUARDIAN, ET AL., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 23-300 |
| MARC D. SMITH, ET AL., | ) ) | Judge Martha M. Pacold |
| Defendants. | ) ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

KWAME RAOUL
Illinois Attorney General

Barbara L. Greenspan
Assistant Attorney General
100 W. Randolph St., 11-200
Chicago, Illinois 60601
Counsel for Defendants

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

I.      Factual Background. ............................................................................................... 2

II.     Plaintiffs' Constitutional Claim Must Be Dismissed.............................................. 3

        a.   Plaintiffs' claim is a *Monell* claim that cannot be brought against the State. ................. 4

        b.   Plaintiffs do not and cannot plead what is necessary to state an individual
             capacity claim. ........................................................................................................ 7

        c.   Plaintiffs do not identify their constitutional claim. ....................................... 11

        d.   Defendants are entitled to qualified immunity .................................................. 12

III.    Plaintiffs' Rehabilitation Act and ADA Claims Must Be Dismissed. .................. 15

IV.     Dismissal Should Be With Prejudice. ................................................................... 16

V.      The Putative Class Allegations Should Be Stricken. ............................................ 17

        CONCLUSION ...................................................................................................... 20

# TABLE OF AUTHORITIES

*Almond v. Wexford Health Source, Inc.*,
  No. 15-50291, 2017 U.S. Dist. LEXIS 96540 (N.D. Ill. June 22, 2017) ......................... 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................... 8, 16

*B.H. v. Smith*,
  88 C 5599 (N.D. Ill., Alonso, J.) ...................................................................................... 6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................................... 9

*Bernard v. Scott*,
  501 F. Supp. 3d 611 (N.D. Ill. 2020) ............................................................................... 5

*Brunner v. Liautaud*,
  No. 14-5509, 2015 U.S. Dist. LEXIS 46018 (N.D. Ill. April 8, 2015) ........................... 17

*Burks v. Raemisch*,
  555 F.3d 592 (7th Cir. 2009) .............................................................................. 4, 8, 7, 17

*Campbell v. Kallas*,
  936 F.3d 536 (7th Cir. 2019) .......................................................................................... 14

*CTL ex rel. Trebatoski v. Ashland Sch. Dist.*,
  743 F.3d 524 (7th Cir. 2014) ..................................................................................... 15, 16

*Cummings v. Premier Rehab Keller*,
  *P.L.L.C.*, 142 S. Ct. 1562 (2022) .................................................................................... 16

*Doxtator v. O'Brien*,
  39 F.4th 852 (7th Cir. 2022) ........................................................................................... 14

*Elisa W. v. City of New York*,
  No. 15-5273, 2021 U.S. Dist. LEXIS 167910 (S.D.N.Y. Sept. 3, 2021) ......................... 19

*Engel v. Buchan*,
  710 F. 3d 698 (7th Cir. 2013) ......................................................................................... 10

*Glick v. Walker*,
  272 Fed. Appx. 514 (7th Cir. 2008) ................................................................................ 15

*Glisson v. Ind. Dep't of Corr.*,
  849 F.3d 372 (7th Cir. 2017) ............................................................................................ 5

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ........................................................................................................ 14

*Harper v. Sheriff of Cook County*,
  581 F.3d 511 (7th Cir. 2009) ............................................................ 18

*Hedberg v. Indiana Bell Tel. Co.*,
  47 F.3d 928 (7th Cir. 1995) ............................................................. 16

*Hill v. Shelander*,
  924 F.2d 1370 (7th Cir. 1991) ............................................................ 4

*Hukic v. Aurora Loan Servs.*,
  588 F.3d 420 (7th Cir. 2009) ............................................................ 16

*Humphrey v. Staszak*,
  148 F.3d 719 (7th Cir. 1998) ............................................................ 14

*Hunter v. Bryant*,
  502 U.S. 224 (1991) ...................................................................... 13

*J.H. v. Johnson*,
  346 F.3d 788 (7th Cir. 2003) ............................................... 4, 8, 10, 11

*Jacobs v. City of Chi.*,
  215 F.3d 758 (7th Cir. 2000) ............................................................ 13

*Joseph v. Bd. of Regents of the Univ. of Wis. Sys.*,
  432 F.3d 746 (7th Cir. 2005) ............................................................. 5

*K.H. v. Morgan*,
  914 F.2d 846 (7th Cir. 1990) ............................................................ 13

*Long v. Bd. of Educ.*,
  167 F. Supp. 2d 988 (N.D. Ill. 2001) .................................................. 15

*McDonough Assocs., Inc. v. Grunloh*,
  722 F.3d 1043 (7th Cir. 2013) ............................................................ 6

*McQueen v. Beecher Cmty. Sch.*,
  433 F.3d 460 (6th Cir. 2006) ............................................................. 8

*Murdock v. Washington*,
  193 F.3d 510 (7th Cir. 1999) ............................................................ 15

*N.W. Envtl. Def. Ctr. v. Brennen*,
  958 F.2d 930 (9th Cir. 1992) ............................................................. 4

*Peralta v. Dillard*,
  744 F.3d 1076 (9th Cir. 2014) ......................................................... 5, 6

*Portis v. City of Chi.*,
  613 F.3d 702 (7th Cir. 2010) ............................................................ 18

*Reed v. Illinois*,
    119 F. Supp. 3d 879 (N.D. Ill. 2015) ............................................................. 15

*Reed v. Illinois*,
    2016 U.S. Dist. LEXIS 60875 (N.D. Ill. 2016) ............................................. 15

*Rockford League of Women Voters v. United States Nuclear Regulatory Com.*,
    679 F.2d 1218 (7th Cir. 1982) ....................................................................... 13

*Rossi v. City of Chicago*,
    790 F.3d 729 (7th Cir. 2015) .................................................................... 5, 17

*Safari Childcare, Inc. v. Penny*,
    2018 U.S. Dist. LEXIS 147943 (N.D. Ill. 2018) ......................................... 10

*Saleh v. Pfister*,
    No. 18-1812, 2021 U.S. Dist. LEXIS 15304 (N.D. Ill. Jan. 27, 2021) ............ 6

*Sloan v. Am. Brain Tumor Ass'n.*,
    901 F.3d 891 (7th Cir. 2018) ........................................................................... 9

*Stanek v. St. Charles Community Unit School District No. 303*,
    783 F.3d 634 (7th Cir. 2015) ......................................................................... 15

*Tamayo v. Blagojevich*,
    526 F.3d 1074 (7th Cir. 2008) ................................................................... 9, 16

*Wagoner v. Lemman*,
    778 F.3d 586 (7th Cir. 2015) ......................................................................... 15

*White v. Olig*,
    56 F.3d 817 (7th Cir. 1995) ........................................................................... 12

*Whitlock v. Brueggemann*,
    682 F.3d 567 (7th Cir. 2012) ........................................................................... 7

*Windle v. City of Marion, Ind.*,
    321 F.3d 658 (7th Cir. 2003) ......................................................................... 12

*Woods v. Maryville Academy,*
    2018 U.S. Dist. LEXIS 196599 (N.D. Ill. 2018) ............................................. 9

*Wright-Gray v. Ill. Dep't of Healthcare & Family Servs.*,
    No. 09-4414, 2010 U.S. Dist. LEXIS 6740 (N.D. Ill. Jan. 26, 2010) ................ 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES GOLBERT, COOK COUNTY PUBLIC GUARDIAN, ET AL., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 23-300 |
| MARC D. SMITH, ET AL., | ) ) | Judge Martha M. Pacold |
| Defendants. | ) ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS
AND MOTION TO STRIKE CLASS ALLEGATIONS**

INTRODUCTION

The Eleventh Amendment bars damages suits premised on allegations that a State or its agency's policies, practices, or customs are unconstitutional. Yet Plaintiffs seek money damages against the Illinois Department of Children and Family Services ("DCFS"), and its current and recent Directors and other senior agency leadership, for "policies and practices" that Plaintiffs describe as "widespread," Cmplt. ¶ 25, and "pervasive," *id.* ¶ 76. Plaintiffs allege that DCFS does not have and for at least 35 years has not had enough placements for children who are wards of DCFS, including but not limited to those who are awaiting adjudication for juvenile delinquency at the Cook County Juvenile Temporary Detention Center ("Cook County JTDC"). *See, e.g.*, *id.* ¶¶ 29, 30, 60, 66, 67, 81. By Plaintiffs' acknowledgement, this problem has existed "for decades," *id.* ¶ 5; it is not one that any Defendant created.

The substance of Plaintiffs' section 1983 claim is a *Monell* claim challenging the policies and practices of a State agency, but the Eleventh Amendment precludes *Monell* claims against state agencies. So, as they must, Plaintiffs attempt to dress the claim as something else: an individual capacity lawsuit under section 1983 premised on a specific defendant's personal involvement in the deprivation of a specific plaintiff's constitutional rights. This pleading

1

artifice cannot abrogate the Eleventh Amendment and the immunity from damages suits that it provides.

And because Plaintiffs' actual complaint lies with DCFS and its policies, rather than some wrongful action taken by the individual defendants, Plaintiffs do not link any defendant's conduct to any plaintiff's circumstances. Plaintiffs abandon any guise of attempting to meet that burden by purporting to sue on behalf of putative classes, and in so doing underscore that their Complaint challenges DCFS's policies and practices on a systemic level. To allow the constitutional claim in this case to proceed would eviscerate the Eleventh Amendment, allowing any plaintiff thereby barred from bringing suit to do so simply by alleging that government policymakers had "personal involvement" in setting policies or failing to solve longstanding resource shortages or fix systemic problems. Not surprisingly, the notion that Plaintiffs easily can sidestep the Eleventh Amendment finds no support in the law.

Plaintiffs' Rehabilitation Act and Americans with Disabilities Act ("ADA") claims also are deficient. Plaintiffs plead themselves out of court by alleging that people with disabilities and people without disabilities are subjected to the same policy and practice. Plaintiffs do not and cannot plead the basic elements of a disability discrimination claim, such as offering any factual allegation that DCFS even was aware of any Plaintiff's alleged disability, let alone any facts to support that DCFS discriminated against any Plaintiff on that or any other basis.

These and the other fatal deficiencies described in this memorandum compel the conclusion that Plaintiffs do not and cannot state a cognizable claim. Their Complaint must be dismissed, and because the defects cannot be cured, dismissal should be with prejudice.

## I.      Factual Background.

Plaintiffs plead, but minimize, important factual background and omit other context that is subject to judicial notice. Plaintiffs repeatedly allege that DCFS is responsible for "wrongfully

incarcerating" children. *Id.* ¶ 1-7. To be clear, the Circuit Court of Cook County (through its subdivision, the Cook County JTDC) at all relevant times "incarcerated" plaintiffs, who were awaiting adjudication for delinquency charges and were lawfully detained as a result. The Cook County JTDC houses juveniles charged with murder, sexual assault, carjacking, unlawful use of a weapon, aggravated assault, and other serious offenses. The Circuit Court of Cook County is responsible for the conditions plaintiffs describe at Cook County JTDC. *Id.* ¶¶ 97-104. Plaintiff Golbert works for the Circuit Court of Cook County.[1] *Id.* ¶ 10.

Judges within the Circuit Court of Cook County determine whether children who are housed at Cook County JTDC awaiting adjudication are released and subject to what conditions. 705 ILCS 405/5-501. Judges in the Circuit Court of Cook County use what are called "release upon request" or "RUR" orders. Cmplt. ¶ 2. Plaintiffs acknowledge this nomenclature, but act as if the "upon request" language does not exist. True to their name and plain language, these court orders are conditional, and depend (whether the child is in the custody of a parent, guardian, or DCFS) upon a request for release. *See id.* ¶ 67(i). If DCFS is the guardian or becomes the guardian during delinquency proceedings, and is unable to make that request immediately, then the court conducts regular hearings to determine the appropriate course. *See id.* ¶ 72 ("DCFS … provides weekly updates to the Juvenile Court regarding these children and any efforts being undertaken to find an appropriate placement for them.").

## II.     Plaintiffs' Constitutional Claim Must Be Dismissed.

As a "prerequisite" of a section 1983 suit, a plaintiff "must specify whether suit is brought against the defendant in his official capacity or in his individual capacity." *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991). In "an official capacity suit the plaintiff alleges that the defendant was party to the execution or implementation of official policy or conduct by a

---

[1] *See* https://www.cookcountycourt.org/ABOUT-THE-COURT/Organization-of-the-Circuit-Court.

government." *Id*. In contrast, a personal- or individual-capacity suit focuses on "the constitutional torts of an individual official," and a plaintiff must "show that the official, acting under color of state law, caused the deprivation of a federal right." *Id*. In this type of suit, "[l]iability depends on each defendant's knowledge and actions," *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009), and defendants must be "personally responsible for the constitutional deprivation" for liability to attach. *J.H. v. Johnson*, 346 F.3d 788, 793 (7th Cir. 2003).

Plaintiffs' constitutional claim must be dismissed for four independent but related reasons. First, Plaintiffs plead themselves out of court by attempting to bring a *Monell* claim (an official capacity claim) for damages relating to a state agency's policies and practices. While *Monell* claims about policies and practices are appropriate when filed against local governments, they are barred by the Eleventh Amendment when filed against the State. Second, because the gravamen of Plaintiffs' complaint is about institutional deficiencies, they cannot plead the elements of an individual capacity claim premised on personal involvement in a constitutional tort. Third, Plaintiffs do not identify the constitutional right that they claim Defendants violated. And fourth, Defendants are entitled to qualified immunity.

### a. Plaintiffs' claim is a *Monell* claim that cannot be brought against the State.

Plaintiffs announce that they are bringing a *Monell* claim in the first substantive paragraph of their Complaint: "This action challenges the <u>policies and practices promulgated</u> by Defendants, acting within [DCFS]." [2] Cmplt. ¶ 1 (emphasis added). They leave no doubt by describing the "policies and practices" they challenge as "widespread," *id.* ¶ 25, "pervasive," ¶ 76, and in place since "at least 1988," ¶ 60.[3] As with a *Monell* claim, Plaintiffs do not sue the

---

[2] The ordinary meaning of the word "promulgate" is "to publish" or "to announce officially." *See N.W. Envtl. Def. Ctr. v. Brennen*, 958 F.2d 930, 934 (9th Cir. 1992).

[3] These are the precise terms used to characterize a *Monell* claim. *See Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) ("[A] *Monell* claim requires more than this; the gravamen is not individual

public employees who actually interact with the Plaintiffs (for instance, the caseworkers who have responsibility for identifying placements for specific children who are wards of DCFS), but instead the Directors and other high-level policymakers in the agency. To distinguish a *Monell* claim from a personal involvement claim, courts ask: "is the action about which the plaintiff is complaining one of the institution itself, or is it merely one undertaken by a subordinate actor." *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017). Here, Plaintiffs plainly challenge DCFS's policies and practices, not the actions of subordinate actors disobeying those policies and practices. *See, e.g.,* Cmplt. ¶ 11 ("<u>DCFS</u> failed"); ¶ 12 ("<u>DCFS</u> left her"); ¶ 13 ("<u>DCFS</u> flouted"); ¶ 25 ("countless children in DCFS care who are ordered RUR are left languishing in juvenile jail for weeks or even months <u>by DCFS</u>") (emphasis added).

Such a suit is barred by the Eleventh Amendment. *See Joseph v. Bd. of Regents of the Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005) ("The Supreme Court has expressly held that Congress has not abrogated the states' immunity in § 1983 suits." … "The Court has been clear … that *Monell*'s holding applies only to municipalities and not to states or states' departments.") (citation omitted); *see also Peralta v. Dillard*, 744 F.3d 1076, 1084 (9th Cir. 2014) ("A chronic shortage of resources may well amount to a policy or practice for which monetary relief may be available under *Monell*, but *Monell* claims can't be brought against states, which are protected by the Eleventh Amendment.").

DCFS's policies and practices may be challenged as unconstitutional under *Ex parte Young*, seeking injunctive relief, *see McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1049-

---

misconduct by police officers (that is covered elsewhere under § 1983), but a widespread practice that permeates a critical mass of an institutional body. In other words, *Monell* claims focus on institutional behavior; for this reason, misbehavior by one or a group of officials is only relevant where it can be tied to the policy, customs, or practices of the institution as a whole."); *Bernard v. Scott*, 501 F. Supp. 3d 611, 628-29 (N.D. Ill. 2020) ("For this type of *Monell* claim to exist, [plaintiff] must show that 'an unlawful practice was so pervasive or systematic that policy-making officials knew of its existence and that their acquiescence to the ongoing practice amounted to a policy decision.'") (citation omitted).

50 (7th Cir. 2013), but such suits may not seek damages for past conduct.[4]  *See Peralta*, 744 F.3d

at 1084 ("If the state provided insufficient resources to accord inmates adequate medical care, it

could be compelled to correct those conditions.  But such a lawsuit could provide no redress for

past constitutional violations because the state is protected by sovereign immunity.") (cleaned

up).  And courts do not elevate labels over substance: they readily dismiss on Eleventh

Amendment grounds *Monell* claims packaged as something else.  *See Wright-Gray v. Ill. Dep't*

*of Healthcare & Family Servs.*, No. 09-4414, 2010 U.S. Dist. LEXIS 6740, *8 (N.D. Ill. Jan. 26,

2010) ("When the action is in essence one for the recovery of money from the state, the state is

the real, substantial party in interest and the suit is barred by sovereign immunity.  That is

obviously the case with Count I of the complaint, and naming [an individual defendant] in his

individual capacity will not license an end-run around the Eleventh Amendment in a suit for

monetary relief that would run against the state of Illinois.") (cleaned up and citation omitted);

*Saleh v. Pfister*, No. 18-1812, 2021 U.S. Dist. LEXIS 15304, *7 (N.D. Ill. Jan. 27, 2021) ("From

these allegations, it appears that [plaintiff] is attempting to bring a *Monell* pattern and practice

claim … any such claim for money damages is prohibited under the Eleventh Amendment.").

Plaintiffs proclaim that they seek damages, on a class wide basis, to "once and for all"

change DCFS's policies and practices.  Cmplt. ¶ 7.  Plaintiffs thus once again underscore that

they seek an "end run around the Eleventh Amendment by subjecting the state to precisely the

kind of economic pressure against which the amendment protects it."  *Peralta*, 744 F.3d at 1084.

Plaintiffs' constitutional claim – however labeled or packaged – is barred by the State's Eleventh

Amendment immunity, and must be dismissed accordingly.

---

[4] Plaintiffs allege that the progress of implementing the Consent Decree in *B.H. v. Smith,* 88 C 5599 (N.D. Ill., Alonso, J.), is too slow. Cmplt. ¶¶ 60-66.  Specifically, Plaintiffs note a motion filed in *B.H.* in 2015. Plaintiffs describe correspondence they sent to the judge in *B.H.*  raising the same complaints raised in this case.  *See id.* ¶67.  *B.H.* is an ongoing class action case for injunctive relief pursuant to Fed. R. Civ. P. 23(b)(2).  Plaintiffs in this case do not and may not pursue a claim for injunctive relief: that is precluded by *B.H.*

### b. Plaintiffs do not and cannot plead what is necessary to state an individual capacity claim.

Plaintiff Golbert and his counsel no doubt understand that they cannot bring a *Monell* claim against DCFS. So, they attempt to state a different type of claim: an "individual capacity" claim against current and recent Directors and senior leadership in DCFS premised on their "personal involvement" in "promulgating" what Plaintiffs say are longstanding and engrained DCFS policies and practices. *See* Cmplt. ¶¶ 1, 114-19. As described above, the substance of this claim is a *Monell* claim against DCFS itself, which must be dismissed accordingly. *See Burks*, 555 F.3d at 596 (Plaintiffs' "contention that any public employee who knows (or should know) about a wrong must do something to fix it is just an effort to evade, by indirection, *Monell*'s rule that public employees are responsible for their own misdeeds but not for anyone else's."). But in addition, and as a result, Plaintiffs do not and cannot plead the facts they would need to state an individual capacity claim against the individual Defendants. Because their real dispute is with DCFS's policies and practices, Plaintiffs come nowhere near alleging that any specific Defendant participated in any placement efforts for any specific Plaintiff, let alone committed any wrongdoing in the process.

As a threshold matter, Plaintiffs do not name any caseworkers – the front-line staff who as part of their duties work directly on placing youth – as Defendants in this case, or allege that those caseworkers engaged in unconstitutional conduct (again, because their dispute concerns how DCFS operates, not the wrongful actions of anyone in particular). This forecloses a claim against the supervisors, senior leadership, and Directors who Plaintiffs did name. *See Whitlock v. Brueggemann*, 682 F.3d 567, 581 (7th Cir. 2012) (for section 1983 liability, the defendant's act must be the "cause-in-fact" of the injury and its "proximate cause"); *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006) ("[A] prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor").

Even if Plaintiffs had named caseworkers, they still do not and cannot plead facts that establish supervisor liability for Directors and senior DCFS staff. "The assumption underlying this choice of defendants – that anyone who knew or should have known of [a specific problem], and everyone higher up the bureaucratic chain, must be liable – is a bad one." *Burks*, 555 F.3d at 593. Section 1983 "does not establish a system of vicarious responsibility." *Id.* Rather, "liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." *Id.* at 594; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

"[P]ersonal involvement in the constitutional deprivation" is required for liability to attach, *J.H.*, 346 F.3d at 793, and Plaintiffs plead no facts indicating that the Directors or senior level staff they sue had any personal involvement in any Plaintiff's placement process. In fact, they do not even identify which Defendant or set of Defendants worked at DCFS during any purported constitutional violation. Plaintiffs sue every person who has held the Director role and other senior staff roles without regard to their individual actions in those roles – even an interim director who held the position for two months. This list of defendants reinforces that the suit is about institutional policies rather than individual conduct. Plaintiffs do not identify which actions defendants took or did not take that were illegal; in fact, the most specific <u>factual</u> allegations (as opposed to conclusory allegations) Plaintiffs include about defendants' conduct – such as that defendants generally did not "enter[] into contracts to develop new placements," Cmplt. ¶¶ 29-30, and did not "add[] additional supports to a placement such as one-on-one aides or additional funding for other programming or services," *id.* ¶ 84 – simply are not illegal acts, let alone acts that demonstrate personal involvement in any particular plaintiff's placement process. And Plaintiffs' vague and conclusory allegations that Defendants had a ready panacea to create more placements but decided not to use it, *id.* ¶¶ 29, 43, 45, 48, 90, are not plausible

and are contradicted by Plaintiffs' allegations that placement shortages have been a challenge for "decades" and "since as far back as at least 1988," *id.* ¶¶ 5, 60.

Left with no better option, Plaintiffs resort to vague conclusions rather than facts, relating to Defendants' general responsibilities and constructive knowledge rather than their specific actions or actual awareness. Conclusions such as that "Defendants have had direct knowledge of each and every class member who has been wrongfully incarcerated despite an order for their release," *id.* ¶ 5, are empty and not creditable – not even supplying the basic fact of which defendant(s) supposedly "knew" about which plaintiff's placement status (allegations that are necessary but not at all sufficient). This sort of conclusory pleading is insufficient; it does not provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must state a claim for relief that is plausible on its face, requiring a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sloan v. Am. Brain Tumor Ass'n.,* 901 F.3d 891, 894 (7th Cir. 2018).

DCFS provided services to between approximately 17,500 and 23,000 youth in each of the past several years, and placement is one of many services the agency provides; it also performs nearly 100,000 investigations per year, approves adoptions and guardianships, licenses day cares, and more.[5] To be plausible, any allegations that DCFS's Directors and senior leadership knew about and played a sufficient personal role in a particular plaintiff's placement efforts to merit individual section 1983 liability requires far more in the way of facts. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008); *Woods v. Maryville Academy,* 2018 U.S. Dist. LEXIS 196599, at *11-12 (N.D. Ill. 2018) (Defendant's "capacity as DCFS director by its nature distanced him from the actions about which [plaintiff] complains…. Indeed, his exercise of a

---

[5] Children and Family Services Act, 20 ILCS 505; DCFS Budget Proposal Overview FY 2024, *available at* https://dcfs.illinois.gov/content/budget-proposal-overview-fy2024.pdf.

higher-level management role does not comport with personal responsibility for the challenged placement decision.") (cleaned up).

General allegations about a defendant's responsibilities and their knowledge that a policy or practice exists also are insufficient.  *See J.H. v. Johnson*, 346 F.3d 788, 792-93 (7th Cir. 2003).  ("The plaintiffs' brief describes at length the statutory duties Illinois law imposes on various DCFS workers.  However, we find that the plaintiffs' theory of statutorily-imposed knowledge falls short of satisfying their burden of proof. … constructive or statutorily-implied knowledge cannot serve as a substitute for actual knowledge or suspicion."); *Almond v. Wexford Health Source, Inc*., No. 15-50291, 2017 U.S. Dist. LEXIS 96540, *7-8 (N.D. Ill. June 22, 2017) (defendant's "actual knowledge of a purported practice or policy of failing to provide adequate medical care is distinct from claiming actual knowledge of [plaintiff's] condition").  And Plaintiffs cannot meet their burden by grouping Defendants and leveling vague and undifferentiated allegations against them. *Engel v. Buchan*, 710 F. 3d 698, 710 (7th Cir. 2013) ("Plaintiffs may not rely on vague references to a group of 'defendants,' without specific allegations tying the individual defendants to the alleged unconstitutional conduct.'") (cleaned up and citation omitted); *Safari Childcare, Inc. v. Penny*, 2018 U.S. Dist. LEXIS 147943, at *7 (N.D. Ill. 2018) (dismissing complaint which failed to "differentiate among the nearly two dozen DCFS employees named as defendants" and failed to specify which defendants took any particular actions).

Plaintiffs' real dispute, as they repeatedly allege, is with the "policies and practices" of DCFS.  Because of this, they cannot plead that any defendant had "personal responsibility" in any plaintiffs' constitutional deprivation to hold them individually liable.

### c. Plaintiffs do not identify their constitutional claim.

It is not clear what constitutional right Plaintiffs are seeking to assert. They characterize their claim as "wrongful incarceration," but DCFS does not "incarcerate" anyone. Plaintiffs make no assertion that their pretrial detention at the Cook County JTDC did not comport with the due process requirements for individuals awaiting adjudication on criminal or juvenile delinquency charges. When serving children who have been arrested and have entered the custody of the Cook County JTDC, DCFS operates as directed by judges within the Circuit Court of Cook County, as Plaintiffs acknowledge. Cmplt. ¶ 72. Compliance with a State court process and order does not violate the Constitution, and Plaintiff Golbert's appropriate recourse with respect to how a County Court system interacts with a State agency does not lie in the federal courts.[6]

With respect to DCFS and its actions, Plaintiffs do not articulate what constitutional right Defendants are alleged to have violated. A traditional section 1983 child welfare claim would fail for a number of foundational reasons: the plaintiffs cannot demonstrate defendants' "personal involvement," *J.H.*, 346 F.3d at 793; a "dereliction of statutory duties" does not "form the basis of a § 1983 claim,"[7] *id.*; "knowledge or suspicion of abuse cannot merely be imputed

---

[6] Plaintiff Golbert and the Loevy & Loevy law firm have brought two other cases against DCFS, its Directors, and senior staff, including a case similar to this one which seeks damages for a shortage of overall placement options. *See Golbert v. Walker*, Case No. 18-8176 (N.D. Ill.) (seeking class certification and damages under section 1983, the Rehabilitation Act, and the ADA for an insufficient number of available placements). That case has been mired in discovery for years, and there, as here, plaintiffs are attempting to litigate a *Monell* claim challenging decades of DCFS policies in the guise of an individual-capacity claim against Directors and other senior staff who worked in the agency over more than a decade. The magistrate judge in that case recently observed that plaintiffs "had not actually thought through their actual theory of liability." *Id.*, Dkt. No. 262 at 1. n.1.

[7] Plaintiffs repeatedly allege that Defendants are not fulfilling their statutory duties as described in the Illinois Children and Family Services Act, 20 ILCS 505, and that Defendants did not exercise their "legal authority" under the Act to increase the number of placements. *See* Cmplt. ¶¶ 21, 26, 29, 30, 37, 38, 43, 45, 48, 50, 53, 55, 58. State law is clear that there is no "private right of action" or any "judicially enforceable claim" relating to whether there are "a sufficient number of placement" options. 20 ILCS 505/2.1. And alleging a violation of State law does not make out a section 1983 claim. *See, e.g., Windle*

11

from a statute," *id.*; and "the plaintiffs must show a connection between any knowledge or suspicion of risk that the defendants may have had and the injury that the children actually suffered," *id.*

Defendants agree that children in juvenile detention should be released as quickly as possible after an appropriate placement is identified, and DCFS takes steps to make this happen, *id.* ¶¶ 72-73. But there can be significant challenges with placement, especially for youth accused of serious crimes: the process of matching a youth to a facility (which may include scheduling and attending interviews and waiting to learn of acceptance) can take time; even after acceptance, some facilities have wait lists that preclude immediate placement; and youth sometimes refuse to attend interviews or otherwise cooperate in their placement. *See id.* ¶ 68 (barriers identified in the 2016 Auditor General report). Youth with criminal histories or who are charged with serious offenses are often more difficult to place because they pose a real or perceived danger to their caregivers, or to other children at facilities that may otherwise be appropriate placements. While DCFS takes this set of challenges seriously and has worked and continues to work to address them, difficulty or delay in identifying placements for hard-to-place youth does not violate any recognized constitutional right that can serve as the basis of a section 1983 claim.

### d. Defendants are entitled to qualified immunity.

Plaintiffs' constitutional claim fails for the additional reason that Defendants are entitled to qualified immunity. Because of the novelty of Plaintiffs' damages suit, this is a case in which qualified immunity should be examined and resolved at the pleading stage.

---

*v. City of Marion, Ind.*, 321 F.3d 658, 662-63 (7th Cir. 2003); *White v. Olig*, 56 F.3d 817, 820 (7th Cir. 1995) ("It is therefore a truism, reiterated many times by this court, that mere allegations of state law infraction are insufficient to support a Section 1983 claim.").

Courts are to resolve qualified immunity issues "at the earliest possible stage of litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *see also Jacobs v. City of Chi.*, 215 F.3d 758, 765 n.3 (7th Cir. 2000)) ("[C]ourts have been admonished that qualified immunity is the ability to be free from suit, not merely a defense from liability, and that, therefore, the question of immunity should be decided at the earliest possible stage. [The Seventh Circuit] has held that resolution of this issue may be appropriate as early as dismissal under Rule 12(b)(6).") (cleaned up). "[A] complaint may be dismissed under Rule 12(b)(6) on qualified immunity grounds where the plaintiff asserts the violation of a broad constitutional right that had not been articulated at the time the violation is alleged to have occurred. … [A] court may properly address this purely legal question under Rule 12(b)(6)." *Jacobs*, 215 F.3d at 765.

Here, as noted above, it is not at all clear what constitutional right Plaintiffs are alleging that Defendants violated. Plaintiffs at times seem to be claiming a constitutional right to have DCFS "request" their release within seven days of an RUR order being issued, *see* Cmplt. ¶¶ 106, 107; but that right never has been articulated by any court. At other times, Plaintiffs seem to be claiming a sweeping constitutional right to have DCFS eliminate resource shortages and placement challenges altogether. Cmplt. ¶¶ 29, 30, 81. That right also never has been articulated; to the contrary, Seventh Circuit precedent holds that resource constraints must inform when liability may arise from a child welfare placement.[8] *K.H. v. Morgan*, 914 F.2d 846, 853-54 (7th Cir. 1990).

---

[8] Plaintiffs' allegations that DCFS can spend without limitation to "create" more placements irrespective of its budget set by the State's legislative process is fanciful, and cannot be credited as a plausible factual allegation. Cmplt. ¶ 88, 90. In the similar Golbert case against DCFS, this same theory of liability was advanced and then abandoned. Case No. 18-8176, Dkt. 262 at 1 n.1. Here, Plaintiffs do not even cite the portion of State statute that they believe exempts DCFS from the State budget and from the universal reality that governmental resources always are limited. *See, e.g.*, *K.H.*, 914 F.2d at 853 ("The needs of neglected, abused, and abandoned children compete with other demands, both public and private, for scarce resources."); *Rockford League of Women Voters v. United States Nuclear Regulatory Com.*, 679 F.2d 1218, 1222 (7th Cir. 1982) ("Government agencies have limited resources to perform their appointed

Against this backdrop, dismissal on qualified immunity grounds is required because its purpose is to protect "all but the plainly incompetent or those who knowingly violate the law," *Humphrey v. Staszak*, 148 F.3d 719, 727 (7th Cir. 1998) (citation omitted). Defendants are protected unless they can "fairly be said to 'know' that the law forbade" their "conduct." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Plaintiffs do not complain of "conduct" by the Defendants; they complain instead about the *existence* of longstanding resource shortages. At the Complaint's most specific, Defendants are charged with not "entering into contracts to develop new placements," Cmplt. ¶¶ 29-30, and not "adding additional supports to a placement such as one-on-one aides or additional funding for other programming or services," *id.* ¶ 84. That is simply not forbidden or illegal conduct, let alone conduct that is so obviously illegal that Defendants would have "known" it to be forbidden. The question to be answered in analyzing qualified immunity is whether a reasonable official in Defendant's position would have known that her conduct was unlawful. While a case directly on point is not required, "'precedent must have placed the ... constitutional question beyond debate'[.]" *Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2019) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). "[T]he Supreme Court has repeatedly emphasized that the clearly established law must share specific details with the facts of the case at hand." *Doxtator v. O'Brien*, 39 F.4th 852, 863 (7th Cir. 2022).

At its core, the only "wrongdoing" that the Defendants are accused of (as evidenced *inter alia* by suing an unbroken chain of Directors and other senior staff, including an interim Director who held that role for approximately two months, *id.* ¶ 27) is serving in the capacity of DCFS

---

tasks. The courts cannot tell them how to allocate those resources so as to get the most value out of them."). As with every other agency in State government, DCFS is constrained by its appropriated budget. *See* Illinois State Budget FY 2024 at 266-71, *available at* https://budget.illinois.gov/fy2024-budget-book/Fiscal-Year-2024-Operating-Budget.pdf.

Director or in other senior leadership roles.  Qualified immunity shields Defendants from sweeping liability predicated not on their conduct but on their position.

### III.   Plaintiffs' Rehabilitation Act and ADA Claims Must Be Dismissed.

Plaintiffs' Rehabilitation Act and ADA claims fail for similar reasons.[9]  To prevail on these claims (courts treat them as "functionally identical"), plaintiffs must prove that they (1) are a qualified individual with a disability and (2) that they were denied access to a program or activity "because of" their disability.  *Wagoner v. Lemman*, 778 F.3d 586, 592 (7th Cir. 2015). To obtain damages, as Plaintiffs seek here, Plaintiffs must demonstrate "intentional discrimination."  *CTL v. Ashland Sch. Dist.*, 743 F.3d 524, 528 n.4 (7th Cir. 2014).

Plaintiffs plead themselves out of court by alleging that disabled and non-disabled children were treated alike under DCFS's "widespread," Cmplt. ¶ 25, and "pervasive," *id.* ¶ 76, policy and practice, *compare* ¶ 106 *with* ¶ 107; *see also id.* ¶ 81 (alleging that the lack of "sufficient placement capacity affected many children in DCFS care").  This is fatal to their claim. *See Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999) (affirming dismissal where plaintiff alleged that the purported "discriminatory" policy applied across the institution, not just those with a disability); *Glick v. Walker,* 272 Fed. Appx. 514, 521 (7th Cir. 2008) ("[Plaintiff] has pleaded himself out of court because he alleges that he was denied access to group therapy because of his security status, not because of any disability.").

Plaintiffs nowhere allege even in conclusory fashion (let alone make the required factual allegations) that DCFS had any knowledge of Plaintiffs' disabilities.  *See Long v. Bd. of Educ.*, 167 F. Supp. 2d 988, 991 (N.D. Ill. 2001) ("[P]laintiff cannot prove that the decision to suspend him was discriminatory unless the decisionmakers had knowledge of the disability prior to the

---

[9] All Defendants other than DCFS should be dismissed from the Rehabilitation Act and ADA claims.  *See Stanek v. St. Charles Community Unit School District No. 303*, 783 F.3d 634 (7th Cir. 2015) (affirming dismissal of official capacity defendants where plaintiff also sued the public entity); *Reed v. Illinois*, 119 F. Supp. 3d 879, 883 (N.D. Ill. 2015); *Reed v. Illinois*, 2016 U.S. Dist. LEXIS 60875 (N.D. Ill. 2016).

decision."); *cf. Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995) ("[A]n employer cannot fire an employee 'because of' a disability unless it knows of the disability. If it does not know of the disability, the employer is firing the employee 'because of' some other reason."). Nor do they provide anything other than rank speculation and vague conclusions to connect any plaintiff's disability with any placement delay. *Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."). Plaintiffs allege no facts that could lead to a plausible inference of "intentional discrimination." *Id.* at 683 (Rule 8 is not satisfied if the "complaint does not contain any factual allegation sufficient to plausibly suggest [a] discriminatory state of mind.").[10] The Rehabilitation Act and ADA claims must be dismissed.

## IV. Dismissal Should Be With Prejudice.

"[C]ourts have broad discretion to deny leave to amend where . . . the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). And Seventh Circuit "case law recognizes that a party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims;" or when "it would be necessary to contradict the complaint in order to prevail on the merits." *Tamayo*, 526 F.3d at 1086 (citation omitted). "If the plaintiff voluntarily provides unnecessary facts in her complaint, the defendant may use those facts to demonstrate that she is not entitled to relief." *Id.* (citation omitted).

Here, Plaintiffs have foreclosed all avenues to obtaining damages by the allegations they included in their Complaint. Any constitutional claims against the State are barred by the

---

[10] Only compensatory damages are available under the Rehabilitation Act and the ADA. Plaintiffs do not plead or identify any cognizable "compensatory" damages. The "emotional damages" that they focus their Complaint on, *see* Cmplt. ¶¶ 97-104, 116-119, are not recoverable. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1576 (2022). Nor are punitive damages. *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014).

Eleventh Amendment. Plaintiffs' allegations have laid bare that "the gravamen" of their complaint "is not individual misconduct …, but a widespread practice that permeates a critical mass of an institutional body." *Rossi*, 790 F.3d at 737. Plaintiffs would need to contradict the facts already pled (attributing plaintiffs' injuries to "policies and practices" DCFS "promulgated," Cmplt. ¶ 1, that have been in place since "for decades," *id.* ¶ 5, and are "widespread," *id.* ¶ 25, and "pervasive," *id.* ¶ 76) in order to state a claim predicated instead on individual wrongdoing – *violating* rather than *promulgating* DCFS policies. Likewise, with respect to their Rehabilitation Act and ADA claims, Plaintiffs would need to contradict the facts already pled (that the lack of "sufficient placement capacity affected many children in DCFS case," *id.* ¶ 81; and that disabled and non-disabled Plaintiffs were treated alike, *compare* ¶ 106 *with* ¶ 107) in order to allege the intentional discrimination required to seek damages. Because amendment would be futile, the claims should be dismissed with prejudice.

### V. The Putative Class Allegations Should Be Stricken.

Although Plaintiffs' claims should be dismissed altogether, Plaintiffs' class claims additionally cannot withstand scrutiny and should be stricken. "If the plaintiff's class allegations are facially and inherently deficient "a motion to strike class allegations … can be an appropriate device to determine whether [the] case will proceed as a class action." *Brunner v. Liautaud*, No. 14-5509, 2015 U.S. Dist. LEXIS 46018, *18-19 (N.D. Ill. April 8, 2015) (citing cases). Plaintiffs' defective class allegations fail even at the pleading stage.

As described above, Plaintiffs' constitutional claims may proceed only if they are predicated on the "personal liability" of each of the Defendants. "Liability depends on each defendant's knowledge and actions." *Burks*, 555 F.3d at 593-94 (citation omitted). The focus on personal involvement and each of the twelve individual defendants' unique knowledge and actions with respect to each of nine plaintiffs' unique placement processes cannot be reconciled

with the typicality, commonality, and predominance requirements of Rule 23(b)(3). As a result, while section 1983 cases pursuing injunctive relief on a class wide basis are relatively common (since personal involvement is irrelevant), Defendants are not aware of any section 1983 damages suits (which hinge on personal involvement) certified under Rule 23(b)(3) – and certainly none involving the myriad fact-bound and individualized determinations at issue here: the reasons for a particular plaintiff's pretrial detention; the specific placement needs of a particular plaintiff (whether they have family or kin who may be appropriate placements; whether they need complex medical or psychiatric care; whether they may pose a risk of violence toward adult caregivers or other children); the details of a particular defendant's knowledge of and conduct in relation to the particular plaintiff; whether that conduct was reasonable in light of available alternatives at the time and a particular plaintiff's placement challenges; whether plaintiff bears some responsibility for his own injury, including whether the reasons for the plaintiff's pretrial detention (often involving allegations of committing serious or violent crimes) limits the available placement options; whether plaintiff suffered injury as a result of defendant's conduct; and, if so, the extent of the injury and how to compensate for it.

To the contrary, the Seventh Circuit has held specifically that class certification is not appropriate when questions like "whether the length of the delay before the detainee's release was reasonable in any given case" must be resolved. *See Harper v. Sheriff of Cook County*, 581 F.3d 511, 515 (7th Cir. 2009) (noting various justifications for delay and determining that "[l]iability, to saying nothing of damages, would need to be determined on an individual basis. Thus, common issues do not predominate over individual issues, making this case inappropriate for class disposition."); *Portis v. City of Chi.*, 613 F.3d 702, 705 (7th Cir. 2010) ("The premise of the class certification is that one rule applies to all members. Fed. R. Civ. P. 23(b)(3). Because

reasonableness is a standard rather than a rule, and because one detainee's circumstances differ from another's, common questions do not predominate and class certification is inappropriate.").

Courts likewise deny class certification in the child welfare context – even in cases simply seeking injunctive relief (*i.e.*, those not predicated on personal responsibility) – due to the highly fact-specific nature of the challenges in any given child's placement. *See Elisa W. v. City of New York*, No. 15-5273, 2021 U.S. Dist. LEXIS 167910, *36-37 (S.D.N.Y. Sept. 3, 2021) ("[T]he named Plaintiffs' claims cannot be said to arise from the same course of events as those of other children, because it is not possible to determine what caused a permanency delay, a specific placement, an untimely or poorly-conceived case plan, or an instance of maltreatment, without evaluating all of the other contributing facts and influences. To give just one example, a key purpose of foster care is to remedy the root cause of a child's separation from family by providing parents with services such as housing assistance, mental health treatment, and substance abuse counseling. Many delays in returning a child to their parents, however, flow from delays in parents receiving those services—it can take months, or even years, to obtain housing or to be admitted to mental health or drug treatment programs. These delays and complications are particular to each child and their respective family members.").

It is difficult to conjure a more individualized inquiry than the reasons for the duration of pretrial detention, compounded by the reasons for delay in a child welfare placement, compounded by a liability standard that hinges upon a defendant's specific knowledge and personal involvement with respect to a specific plaintiff's placement process. Because Plaintiffs' class allegations are "facially and inherently deficient," they should be stricken.

CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed with prejudice, and

Plaintiffs' class allegations should be stricken.


Dated:  June 1, 2023                         Respectfully submitted,

Barbara L. Greenspan                         KWAME RAOUL
Assistant Attorney General                   Illinois Attorney General
100 W. Randolph St., 11-200
Chicago, Illinois  60601             By:    s/Barbara L. Greenspan
(312) 814-7087                               Barbara L. Greenspan
Barbara.greenspan@illinois.gov

**CERTIFICATE OF SERVICE**

The undersigned, an attorney of record, hereby certifies that, on June 1, 2023, she caused to be filed through the Court's CM/ECF system a copy of Defendants' Memorandum in Support of Their Motion to Dismiss and Motion to Strike Class Claims.  Parties of record may obtain a copy of this filing through the Court's CM/ECF system.

/s/ *Barbara L. Greenspan*
Barbara L. Greenspan