IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | |
|---|---|
| CHARLES GOLBERT, Cook County Public Guardian, on behalf of J.B., K.J., M.J., D.M., J.R., J.S., T.W., and Named Plaintiffs Janiah C., E.C., on behalf of themselves and a class of others similarly situated, | Case No. 1:23-cv-00300 |
| | The Hon. Martha M. Pacold |
| Plaintiff, | |
| | **JURY TRIAL DEMANDED** |
| v. | |
| MARC D. SMITH, DEBRA DYER-WEBSTER, BEVERLY J. WALKER, LAUREN WILLIAMS, RYAN GOODWIN, ANTWAN TURPEAU, JANET WUKAS AHERN, JACQUELIN DORTCH, KEITH POLAN, ASHLEY DECKERT, SARI ROWITZ, KAREN AUSTIN-ANTOINE, and the ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Defendants. | |

## PLAINTIFFS' MOTION FOR RECONSIDERATION

NOW COME Plaintiffs, on behalf of themselves and a class of other children similarly situated, by and through their attorneys, Loevy & Loevy, and respectfully move for reconsideration of this Court's order dismissing their Section 1983 claims as follows:

### I. INTRODUCTION

Motions to reconsider are not brought lightly, but sometimes they are necessary to correct inadvertent legal errors. This is such a case.

In granting Defendants' motion to dismiss Plaintiffs' Section 1983 claims, this Court relied on a Fourth Circuit test to determine if statutory claims (rather than Constitutional claims)

were barred by sovereign immunity. Dkt. 62 at 10. But the Fourth Circuit has expressly disavowed use of that test when considering Section 1983 claims because doing so "would undermine the very purpose of § 1983." *Adams v. Ferguson*, 884 F.3d 219, 225-226 (4th Cir. 2018).

The important distinction between statutory claims and Constitutional claims was not considered by this Court's decision. Plaintiffs accordingly request that this Court revisit the issue with the proper legal foundation as set forth below.

## II. ARGUMENT

### A. The Court Erroneously Relied on a Test that the Fourth Circuit Has Expressly Held Inapplicable to 1983 Claims

In ruling that sovereign immunity barred Plaintiffs' Section 1983 claims, the Court employed a test from the Fourth Circuit case *Cunningham v. Lester*, 990 F.3d 361 (4th Cir. 2021). But, as the Fourth Circuit has held in *Adams*, that test is inapplicable in the Section 1983 context. *See* 884 F.3d at 225.

The Fourth Circuit initially adopted the five-factor test to determine whether a statutory claim is brought against the state or an individual in *Martin v. Wood*, 772 F.3d 192 (4th Cir. 2014)[1] In that case, the plaintiff alleged that the defendants—her former supervisors—had violated the Fair Labor Standards Act (FLSA). *Id*. The court found that although the plaintiff had alleged her claims against her former supervisors in their individual capacities, the suit was in fact brought against the state because the individual defendants' "actions were inextricably tied to their official duties at the Hospital." *Id*. at 193. In those circumstances, the court held that the

---

[1] The five factors are: "(1) were the alleged unlawful actions of the state officials tied inextricably to their official duties; (2) if the state officials had authorized the desired relief at the outset, would the burden have been borne by the State; (3) would a judgment against the state officials be institutional in character, such that it would operate against the State; (4) were the actions of the state officials taken to further personal interests distinct from the State's interests; and (5) were the state officials' actions *ultra vires*." *Cunningham v. Lester*, 990 F.3d 361, 366 (4th Cir. 2021) (quoting *Martin v. Wood*, 772 F.3d 192, 196 (4th Cir. 2014)).

state, which ran the hospital, was the real party in interest and the FLSA suit was therefore barred by sovereign immunity. *Id*. at 196. Revisiting the issue in *Cunningham*, the Fourth Circuit applied the *Martin* factors to a suit brought under the Telephone Consumer Protection Act (TCPA) and, like in *Martin*, focused its inquiry on "whether the named defendants committed the complained-of conduct in the course of performing their official duties, or whether they acted *ultra vires* or in pursuit of private interests." *Cunningham*, 990 F.3d at 366.

In *Martin* and *Cunningham*, the Fourth Circuit applied the five factors to find ultimately that sovereign immunity barred the plaintiffs' statutory claims. But the central inquiry in those cases—whether the defendants were acting as part of their official duties or were acting in their own interest—cannot apply squarely in the Section 1983 context, where an element of the claim is that the defendants were acting under color of law. This is because, in every such circumstance, if the test used to determine whether the Section 1983 defendant is performing his or her official duties, the answer will always be affirmative. This is why the Fourth Circuit explicitly held that the *Martin/Cunningham* factors do not apply to Section 1983 suits, relying on *Hafer v. Melo*, 502 U.S. 21, 26 (1991):

> In *Martin*, we laid out a five-factor inquiry to "identify the real, substantial party in interest" in suits alleging violations of the Fair Labor Standard Act ("FLSA"). [Martin, 772 F.3d] at 196. Those factors focus on the connection between the officer's conduct and his official duties, his interests and the state's interests, and his authority and the state's authority. *See id*. This makes sense in the context of the FLSA, as "Congress manifested a desire to exclusively define the private remedies available to redress violations of" that statute. *Kendall v. City of Chesapeake*, 174 F.3d 437, 443 (4th Cir. 1999). But Congress enacted § 1983 to give private litigants a mechanism to "enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity." *Hafer*, 502 U.S. at 28, 112 S. Ct. 358 (internal quotation marks and citation omitted). Applying the *Martin* factors, which focus on the official character of the defendant's actions, to § 1983 claims would "absolutely immunize state officials from personal liability for acts within their authority and necessary to fulfilling governmental responsibilities." *Hafer*, 502 U.S. at 28, 112 S.Ct. 358. We refuse to apply to § 1983 claims these factors, which we articulated for use in

considering claims under a very different statute, and which would undermine the very purpose of § 1983.

*Adams v. Ferguson*, 884 F.3d 219, 225-226 (4th Cir. 2018); *see also Gibbons v. Gibbs*, 99 F.4th 211, 215 (4th Cir. 2024) ("[i]n [*Adams*] this Court specifically considered, and specifically rejected, the argument that 'the *Martin* factors' 'apply to [Section] 1983 claims.' The Court explained that the FLSA and Section 1983 are 'very different statute[s],' and it concluded that applying the *Martin* factors to Section 1983 claims would stray from the Supreme Court's decision in *Hafer* and 'undermine the very purpose of [Section] 1983.'") (internal citations omitted); *Does v. Whitmer*, 69 F.4th 300, 306 (6th Cir. 2023) ("Few of our sister circuits have proposed tests for distinguishing between individual- and official-capacity actions. *See Cunningham v. Lester*, 990 F.3d 361, 366 (4th Cir. 2021); *Attwood v. Clemons*, 818 F. App'x 863, 871–72 (11th Cir. 2020) (Grant, J., concurring in part). These tests accentuate rather than resolve the difficulty of distinguishing between the two categories of suits and may, in part, run counter to the Supreme Court's guidance in *Hafer* and *Lewis* [*v. Clarke,* 581 U.S. 155, 163 (2017)]."). In other words, *Martin* factors cannot apply to Section 1983 claims because doing so would be inconsistent with the statutory elements and the underlying purpose of Section 1983 as explained by the Supreme Court in *Hafer*.

    B. **Section 1983 Claims Predicated on Violations of the Constitution are Categorically Different from the Statutory Violations at Issue in *Cunningham* and *Martin***

"The very purpose of [Section] 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, whether that action be executive, legislative, or judicial." *Mitchum v. Foster*, 407 U.S. 225, 242 (1972) (internal citations omitted). Put differently, Section 1983 provides a remedy against state officials acting under color of state law

if they violated one's constitutional rights. As alleged in Plaintiffs' complaint, the individual defendants in this suit violated Plaintiffs' constitutional rights over a period of several years by leaving them in juvenile detention long after the reason for their detention expired. It is the conduct of these individual officers acting under color of state law of which Plaintiffs complain, and under Section 1983, "'on the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.'" *Hafer v. Melo,* 502 U.S. 21, 25 (1991), quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (emphasis in original).

A governmental actor cannot avoid liability for constitutional violations because the violation was committed as part of his or her duties, because that would run afoul of the statutory requirements of Section 1983. *See Hafer*, 502 U.S. at 27–28 (1991) ("[t]he requirement of action under color of state law means that [the state official defendant] may be liable for discharging respondents precisely because of her authority as auditor general. We cannot accept the novel proposition that this same official authority insulates [the defendant] from suit"). Any test that considers whether a state official's challenged actions were part of their official duties will invariably conclude that sovereign immunity applies because of the Section 1983 requirement that mandates the challenged action be effectuated under color of state law.

Claims arising under Section 1983 to redress constitutional wrongs are, in other words, distinguishable from statutory claims such as those arising under FLSA. If a state actor could avoid liability for violating the constitution by claiming sovereign immunity, then any number of wrongs would go unvindicated. *See Kolb v. State of Ohio, Dep't of Mental Retardation & Developmental Disabilities, Cleveland Developmental Ctr.,* 721 F. Supp. 885, 897 (N.D. Ohio 1989) ("The Supreme Court did not intend to adopt the 'ultra vires' theory advanced by the

defendants. If such were the case, the Court would have effectively overruled several of its prior decisions and established a new and completely unqualified requirement for pleading section 1983 actions against state officials in their individual capacities."). In fact, the Supreme Court has never held that sovereign immunity shielded governmental actors from Section 1983 claims: "Nor have we ever held that a civil rights suit under 42 U.S.C. § 1983 against a state officer in his individual capacity implicates the Eleventh Amendment and a State's sovereign immunity from suit." *Lewis*, 581 U.S. at 166.

While true that it is Plaintiffs' desire that, by bringing this lawsuit, they hope to "once and for all prevent more children from suffering wrongful incarceration while in DCFS care." Dkt. 1 ¶ 7. But the assertion that a problem is widespread or longstanding does not necessarily mean that an individual cannot be held liable for violating constitutional rights under Section 1983, so long as the allegations are causally linked to the individual defendants, which here, as alleged, they are.

Viewing the well-plead allegations in Plaintiffs' favor, it is inaccurate to conclude that Plaintiffs' claims amount to no more than "a generalized attack on a state agency," *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 613 n.9 (7th Cir. 2002), particularly since Plaintiffs have plead specific allegations against the individual defendants for violations of their constitutional rights. *See, e.g.*, Dkt. 1 ¶¶ 26-59. Rather, the allegations of the pervasive and wide-ranging practices and failures by the individual defendants in the Complaint support the notion that Plaintiffs' claims warrant class-wide treatment. This does not mean that the individual defendants are not potentially culpable.

Moreover, nothing in the Complaint suggests that DCFS or the State will need to expend or withhold money if Plaintiffs prevail, because the complained-of-conduct in Plaintiffs' Section

1983 claim is linked to the actions of the individual defendants, not the state. *See id*. Relatedly, at least at this stage of litigation, Defendants have not proven that the relief Plaintiffs seek (including, for example, that the individual defendants had the ability to develop more placement capacity or resources) will require the state to expend more money than already provided to DCFS to fulfill its obligations to Plaintiffs. In fact, as pled, housing the putative class members outside the juvenile detention center will save taxpayer dollars, and actually require fewer resources from the State. Dkt. 1 at ¶¶ 92-96.

## C. Seventh Circuit Law Imposes Individual Liability So Long as Part of the Relief Sought Will Not Come from the State

Consistent with the Supreme Court's decision in *Lewis*, the Seventh Circuit and other jurisdictions look to the relief sought by the plaintiff to conclude that so long as some measure of relief will not come from the State itself, the claims are not barred by sovereign immunity. And as the Supreme Court has explicitly held, "damages awards against individual defendants in federal courts are a permissible remedy in some circumstances notwithstanding the fact that they hold public office. That is, the Eleventh Amendment does not erect a barrier against suits to impose individual and personal liability on state officials under § 1983." *Hafer*, 502 U.S. at 30–31 (internal citations omitted).

A comparable case from this district, *Safari Childcare Inc. v. Penny*, is instructive. No. 17 C 8547, 2019 WL 3554993, at *4 (N.D. Ill. Aug. 2, 2019). In that case, the plaintiffs advanced a Section 1983 against individual defendants employed by DCFS. *See id*. In denying the defendants' motion to dismiss the plaintiffs' Section 1983 claims based on sovereign immunity, the court held:

> Although Plaintiffs' allegations concern actions that individual DCFS employees allegedly took on DCFS's behalf, this suit does not challenge the minimum requirements for operating a licensed daycare …but rather maintain

> that the DCFS employees selectively enforced those rules against Safari daycare centers on constitutionally impermissible grounds…That is the hallmark of individual capacity claims not barred by sovereign immunity.

*Id; see Kroll v. Bd. of Trs. of the Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991) ("Personal-capacity suits raise no eleventh amendment issues even though an official might have the requisite nexus to the state in order for his or her actions to be labelled state action."); *Osteen v. Henley*, 13 F.3d 221, 224 (7th Cir. 1993) ("Insofar as the defendants are also being sued for damages in their individual capacity, the Eleventh Amendment does not bar the suit."). The court also noted that defendants' contention that the suit was "in essence" against the state ignored the myriad of "paragraphs of allegations that specify which individual Defendants did what." *Id*; *see, e.g.*, Dkt. 1 ¶¶ 26-59.

In a similar vein, courts have looked to demands for punitive damages as indicative that the claims should not be barred by sovereign immunity:

> Moreover, Reinebold seeks not only compensatory damages, but punitive damages against Bruce and Norris as well. This detail further sets his case apart from Omosegbon, Haynes, and Harden, yet goes unmentioned by Defendants in their briefing. Courts have allowed individual capacity claims to proceed where a plaintiff seeks both punitive and compensatory damages, because punitive damages "may be available from the Defendants sued in their individual capacity but not from the state, which is immune to suit except for [injunctive relief through the *Ex Parte Young* doctrine]." *Doe*, 2019 WL 1369348, at *3 (emphasis added); *see also Smith v. Wade*, 461 U.S. 30, 35-36 (1983) (holding that individual officers may be liable for punitive damages under § 1983); *Bornick v. Sondalle*, 179 F. Supp. 2d 941, 949 (E.D. Wis. 2001) ("Punitive damages are indicative of an individual capacity claim.").

*Reinebold v. Indiana Univ. at S. Bend*, No. 3:18-CV-525 JD, 2019 WL 1897288, at *3 (N.D. Ind. Apr. 25, 2019). Similarly, Plaintiffs are seeking punitive damages from the individual defendants because the Section 1983 claim is averred against the individual defendants in this action. *See Kolb.,* 721 F. Supp. at 895 ) ("Individual capacity suits, however, do not seek recovery of money from the state. Therefore, the Eleventh Amendment does not bar actions for money damages

arising from constitutional torts committed by state officials who are then sued in their individual capacities in federal court").

Ultimately, Plaintiffs seek damages from the individual defendants themselves for violating Plaintiffs' constitutional rights, not the State, and the judgment sought will therefore "not expend itself on the public treasury or domain, or interfere with the public administration." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984); *see also Lewis*, 581 U.S. at 165 ("the critical inquiry is who may be legally bound by the court's adverse judgment, not who will ultimately pick up the tab"). By contrast, a damage award in FLSA action against a state employer such as in *Martin* would necessarily require the state—not the individual supervisor—to be legally bound by the judgment if the plaintiff were to prevail. *See, e.g.*, *Mestek v. LAC Courte Oreilles Cmty. Health Ctr.*, 72 F.4th 255, 262 (7th Cir. 2023) ("These principles find straightforward application here and show why Mestek's claims are against the employee defendants only in their official capacities. In her complaint, Mestek requested front pay, back pay, damages, reinstatement, and injunctive relief prohibiting the defendants from blacklisting or retaliating against her. Critically, however, any monetary relief would come from the Health Center's coffers. And reinstatement, as well, would likewise require action on the part of the Health Center, not the individual defendants."). This distinction clearly indicates that Plaintiffs' Section 1983 claims are averred against the individual defendants, not the State.

In dismissing Plaintiffs' Section 1983 claim, this Court also relied on the Seventh Circuit unpublished opinion in *Genskow*, where the court held that the individual tribal officers were not the real parties in interest in a Section 1983 suit because, in carrying out the alleged constitutional violation, they were merely following the tribal "Chairman's directive, [and] the officers were acting merely as 'an arm or instrumentality' of the tribe." *Genskow v. Prevost*, 825

F. App'x 388, 391 (7th Cir. 2020). But that case is distinguishable. Unlike in *Genskow*, where the actions of the defendants were "in essence" the tribe's, the actions of the individual defendants here are not attributable to the State directly. There, the defendant officers removed the plaintiff from a tribal meeting, allegedly in violation of her constitutional rights. The Seventh Circuit held, in part, that "because the tribal officers were acting not under color of state law, but rather in their official duties toward a tribal member on the tribe's own land," the suit was barred by sovereign immunity. *Id*. at 390. "Allowing [that] suit to proceed would be at odds with tribal self-government and undermine the authority of tribal forums." *Id*.

Instead, the allegations here assert that the individual defendants are acting under color of state law in violating Plaintiffs' constitutional rights, which is not at odds with the State's sovereign immunity—otherwise, Plaintiffs would have no cause of action under Section 1983 against these defendants. *See Lewis*, 581 U.S. at 166 ("We have not before treated a lawsuit against an individual employee as one against a state instrumentality, and Clarke offers no persuasive reason to do so now").

### III. CONCLUSION

For the reasons above, Plaintiffs respectfully move the Court to reconsider its ruling dismissing Plaintiffs' Section 1983 claim.

    RESPECTFULLY SUBMITTED,

    <u>/s/ Fatima Ladha</u>
    Attorney for Plaintiff

Date: April 28, 2025

        Jon Loevy
        Russell Ainsworth
        Megan Pierce
        Fatima Ladha
        LOEVY & LOEVY
        311 North Aberdeen, 3rd Floor
        Chicago, IL 60607
        (312) 243-5900